**Edith KENNAN, as personal representative of George Kennan, Deceased, Plaintiff,**

v.

**DOW CHEMICAL COMPANY, et al., Defendants.**

**No. 86–69–Civ–J–14.**

United States District Court, M.D. Florida, Jacksonville Division.

July 20, 1989.

Wayne Hogan, Jacksonville, Fla., for plaintiff.

Charles C. Howell, III, William R. Swain, Jeffrey D. Dunn, Don H. Lester, Frank Hession, Victor M. Halback, Jr., Jacksonville, Fla., Joseph J. Ortego, Uniondale, N.Y., and Peter D. Braun, Buffalo, N.Y., for defendants.

## AMENDED OPINION AND ORDER [1]

SUSAN H. BLACK, District Judge.

This case came on to be heard on Reichold Chemicals, Inc.'s Motion For Summary Judgment, filed on October 21, 1988. The remaining defendants adopted Reichold's motion. Plaintiff filed a response in opposition to the motion on November 14, 1988. The Court heard oral argument on December 2, 1988. At the hearing, the Court ordered the parties to file various supplemental memoranda. Reichold filed a supplemental memorandum on December 16, 1988. Plaintiff filed a response to the supplemental memorandum on January 6, 1989. Reichold filed a reply to plaintiff's supplemental memorandum on January 18, 1989.

---

**1.** This Court conducted a charge conference on June 27, 1989, in order to obtain a final jury charge in this case. In the course of that hearing the Court became aware of various questions as to the interpretation of certain parts of this Court's original Opinion And Order, filed January 25, 1989. The Court shall, therefore, file this Amended Opinion And Order to clarify those issues.

## I. *Procedural History*

Plaintiff filed the original Complaint in this case on December 18, 1985, in the Circuit Court for Duval County, Florida. The original Complaint named Dow Chemical Company, Monsanto Chemical Company, Reichold Chemicals, Inc., and Vulcan Materials Company. The defendants jointly removed the case to this Court on January 30, 1986, pursuant to the Court's diversity jurisdiction. Subsequently, the various defendants filed answers to the Complaint.

On November 25, 1986, this Court entered an Order For Limiting Time For Completion Of Discovery And Setting Pretrial Conference. That order cut off discovery on March 31, 1987, set a deadline for filing motions to add parties and for summary judgment on April 5, 1987, and set a pretrial conference for May 5, 1987.

On April 3, 1987, plaintiff filed a motion to add Idacon and Forshaw Industries as defendants. On April 6, 1987, defendant Vulcan Materials filed a motion requesting additional time in which to file a motion for summary judgment. On April 9, 1987, this Court filed an Amended Order For Pretrial Conference and Limiting Time For Completion Of Discovery. The Court extended the discovery deadline to May 30, 1987, set a deadline on which motions were to be filed for June 22, 1987, and set the pretrial conference for July 22, 1987.

On May 5, 1987, the Magistrate granted plaintiff's motion to add parties. Pursuant to that order, plaintiff on June 17, 1987, filed the Amended Complaint at bar. The defendants subsequently filed answers to the Amended Complaint. On June 18 and 19, 1987, respectively, Defendants Dow Chemical and Monsanto moved to continue the pretrial conference. The Court granted the motion on June 23, 1987. The Court extended discovery through September 30, 1987, required that motions for summary judgment be filed no later than October 12, 1987, and that the parties attend a pretrial conference on November 12, 1987. On September 10, 1987, the Court set the case for trial during the trial term commencing on December 28, 1987.

Defendants Idacon, Forshaw, Dow Chemical Co., and Monsanto filed motions for continuance of trial. Defendants Idacon and Forshaw argued that because they were joined late in the litigation that they did not have adequate time to conduct discovery. Defendants Dow and Monsanto argued that they needed more time to conduct discovery so that they could properly prepare a motion for summary judgment. The Court denied the motions for continuance on November 2, 1987, with leave for the defendants to renew their motions and present oral argument in support of their motions at the pretrial conference.

At the pretrial conference on November 12, 1987, it appeared that plaintiff had failed to provide the defendants with certain evidence that plaintiff intended to introduce at trial. In addition, plaintiff failed to list the evidence in the pretrial stipulation filed by the parties on November 6, 1987. The Court ordered plaintiff to provide the evidence to the defendants and for the defendants to then file motions with specific objections to the evidence. The plaintiff provided the defendants with the evidence, and the defendants subsequently filed motions to strike the evidence arguing that they were prejudiced by plaintiff's late disclosure and their inability to conduct discovery.

On December 18, 1987, the Court granted defendants' motions to exclude any evidence not specifically listed by plaintiff on the pretrial stipulation filed on November 6, 1987. The Court gave plaintiff leave to file a motion for continuance of trial with the understanding that such a motion would be automatically granted and that discovery would be reopened concerning the aforementioned evidence. Plaintiff filed a motion for continuance on December 21, 1987. The Court granted plaintiff's motion for continuance on December 23, 1987, and removed the case from the trial calendar. The Court also extended discovery through February 1, 1988.

The defendants each filed motions for summary judgment on the issue of causation in May and June, 1988. Plaintiff filed a response on June 16, 1988. On Septem-

ber 29, 1988, the Court filed an opinion and order denying the motions for summary judgment.

On September 19, 1988, the Court once again set the case for trial during the trial term commencing on February 27, 1989. Thereafter, defendant Reichold filed the instant motion for summary judgment on October 21, 1988. The other defendants adopted the motion, the plaintiff responded, the Court heard oral argument, and the parties filed supplemental memoranda.[2]

## II. *Summary Of The Amended Complaint*

The Amended Complaint filed on June 17, 1987, alleges that George Kennan [hereinafter "decedent"] was exposed to pentachlorophenol [hereinafter "PCP"], a chemical contained in products manufactured by the defendants, while working for Koppers Company in Alachua County, Florida, beginning in 1961 and continuing through the 1970's and 1980's. Plaintiff alleges that due to the decedent's exposure to PCP, the decedent contracted a blood disease, suffered severe complications, and died.

Count I of the Amended Complaint alleges a claim for negligence in that the defendants: 1) failed to warn the decedent of the dangers associated with products containing PCP and highly toxic contaminants including dioxin, Amended Complaint ¶¶ 8(c) & 8(d); 2) continued to design, manufacture, and market products containing PCP after it became reasonably feasible to design comparable products not containing the chemical, Amended Complaint ¶ 8(b); and 3) failed to take reasonable steps to remove highly toxic contaminants from products containing PCP. Amended Complaint ¶ 8(c).

Count II of the Amended Complaint alleges a claim for strict products liability in that the products produced by the defendants: 1) did not have a reasonably adequate warning of the potential harm that might result from exposure to the products containing PCP, an adequate warning of the presence of highly toxic contaminants, including dioxins, or instructions for working in the vicinity of PCP, Amended Complaint ¶¶ 14(a) & 14(d); 2) contained PCP after it became reasonably feasible to design, manufacture and market reasonably comparable products not containing PCP; and 3) carried with them highly toxic contaminants including dioxins.

## III. *Defendants' Motion For Summary Judgment*

Defendants argue that neither count of the Amended Complaint states a cause of action because of federal preemption of state tort law. In particular, the defendants argue that a damage award under either count would have the effect of regulating insecticide labels contrary to regulations promulgated by the Environmental Protection Agency [hereinafter "EPA"] pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act, [hereinafter "FIFRA"], 7 U.S.C. § 136, *et seq.* Defendants argue that plaintiff's negligence count is wholly based on a theory that an inadequate label constituted negligent failure to warn, and that damage award based on state negligence law would cause the defendants to change their labels in contravention of FIFRA. Similarly, the defendants argue that the strict liability count is based on a theory that an inadequate label rendered the defendants' products that contained PCP defective and unreasonably dangerous. A damage award based on strict liability, defendants argue, would also contravene FIFRA.

Plaintiff responds that preemption is an affirmative defense, and that the defendants' failure to plead preemption in their answers to the Amended Complaint constitutes waiver of the defense.[3] Plaintiff also

---

**2.** The Court notes that each of these motions for summary judgment were filed well past the October 12, 1987, deadline established by the Court in its order of June 23, 1987. The parties were never given leave by the Court to amend that order or otherwise file their motions. The Court did not raise this issue with respect to the first motion for summary judgment. The Court

will waive application of paragraph 2(b) and 9 of that order for purposes of the instant motion.

**3.** Plaintiff took this position for the first time in her supplemental memorandum of law. At oral argument on Reichold's motion for summary judgment, plaintiff stated that she would not

argues that defendants' assertion of the defense at this late date will cause her prejudice. Plaintiff further responds that because the decedent's exposure to PCP occurred prior to the promulgation of FIFRA's labeling provisions, the cause of action could not be preempted. Finally, plaintiff states that there is no preemption because state law is not in conflict with federal law.

### A. Standard On Summary Judgment

A district court's review of a case on a motion for summary judgment is governed by Fed.R.Civ.P. 56. A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the district court that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Fed.R.Civ.P. 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. 477 U.S. at 325, 106 S.Ct. at 2553. When a moving party has so discharged its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" 477 U.S. at 324, 106 S.Ct. at 2553.

The district court must enter summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. at 322, 106 S.Ct. at 2552; Fed.R.Civ.P. 56(c). See also Reflectone, Inc. v. Farrand Optical Co., Inc., 862 F.2d 841, 843–44 (11th Cir.1989). Whether or not the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law, requires the court to draw inferences from the evidence as viewed in the light most favorable to the nonmoving party, and to resolve all reasonable doubts in that party's favor.

The Eleventh Circuit Court of Appeals explained the reasonableness standard in WSB–TV v. Lee, 842 F.2d 1266, 1270 (11th Cir.1988):

> In deciding whether an inference is reasonable, the court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." ... The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts.... When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

842 F.2d at 1270 (citations omitted).

Fed.R.Civ.P. 56(c) requires the district court to deny a motion for summary judgment if the court finds that there exists a genuine issue for trial. What constitutes a "genuine issue for trial" was addressed by the Supreme Court in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In Anderson, the Court stated that "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248, 106 S.Ct. at 2510. The Court further stated that the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 477 U.S. at 251–52, 106 S.Ct. at 2511–2512.

The Court finds that the parties have had adequate time to conduct discovery in this case. The Court will, therefore, address the motion for summary judgment.

### B. Preemption Of State Tort Law By FIFRA

#### 1. The Concept of Federal Preemption

■ The doctrine of preemption is based on Article VI, Clause 2 of the United States Constitution which provides:

---

object to defendants' amending their pleadings

to add the affirmative defense of preemption.

The Constitution and the Laws of the United States which shall be made in Pursuance thererof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Preemption is deemed mandatory when Congress expresses a clear intent to preempt state law, where there is a conflict between state and federal law, where compliance with both state and federal law is impossible, where federal law implicitly bars state regulation, where Congress has legislated comprehensively, or where state law serves as an obstacle to federal objectives. *Public Service Commission v. Federal Communications Commission*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–1899, 90 L.Ed.2d 369 (1986); *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). This Court has recognized that, in deciding whether a federal statute preempts state law, "the Court must ascertain Congressional intent in enacting the federal statute at issue." *Blue Cross and Blue Shield of Florida, Inc. v. Department of Banking and Finance*, 613 F.Supp. 188, 191 (M.D.Fla.1985), *aff'd* 791 F.2d 1501 (11th Cir.1986). An analysis of the legislative history and the specific provisions of FIFRA reveals that in enacting FIFRA Congress expressly intended to preempt state labeling requirements.

## 2. *Legislative History of FIFRA*

FIFRA represents the federal government's detailed comprehensive system for the strict regulation of pesticides. FIFRA was enacted in June, 1947, to replace and expand the protection afforded by the Insecticide Act of 1910, the first federal act regulating the pesticide industry. H.R. Rep. No. 313, 80th Cong., 1st Sess., *reprinted in* 1947 U.S.Code Cong. & Ad. News 1200, 1201. The 1947 Act gave the United States Department of Agriculture authority over the regulation, registration and labeling of "economic poisons and devices."

In 1972, FIFRA was completely revised. Responsibility for enforcement of FIFRA was transferred from the Department of Agriculture to the newly created EPA. The two major goals of the 1972 revisions were to "regulate the use of pesticides to protect man and his environment" and to "extend Federal pesticide regulations to actions *entirely within a single State.*" S.Rep. No. 92–838, 92d Cong.2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 3993 (emphasis added). The intent to create a comprehensive regulatory statute is demonstrated by the President's environmental message included in the Senate Report on the proposed 1972 Act. It notes, in pertinent part, that:

Currently, Federal controls over pesticides consist of the regulation of the registration and labeling requirements of the Federal Insecticide, Fungicide and Rodenticide Act. The administrative processes contained in the law are inordinately cumbersome and time consuming, and there is no authority to deal with the actual use of pesticides. The labels approved under the Act specify uses to which pesticide may be put, but there is no way to insure that the label will be read or obeyed. The comprehensive strengthening of our pesticide control laws is needed.

S.Rep. No. 92–970, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 4092, 4093–94.

Both the House and Senate bills explicitly detail the desire for federal preemption concerning labeling. The House bill provides:

Section 23. AUTHORITY OF STATES

Subsection (b) *preempts any State labeling or packaging requirements* differing from such requirements under the Act.

H.R. 10729, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 4010, 4021 (emphasis added). Similarly, the Senate bill provides:

Section 24. AUTHORITY OF STATES

Subsection (b) *preempts any State or local government labeling or packaging requirements* differing from such requirements under the Act.

S.Rep. No. 92–970, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 4092, 4128 (emphasis added). Therefore, it is clear that the express intent of Congress in enacting the 1972 revisions to FIFRA was to preempt state regulation of labeling requirements. The authority to promulgate such regulations was reserved exclusively for the EPA.

### 3. Construction of FIFRA and its Regulations

Pursuant to 7 U.S.C. § 136a(c)(5)(C), the administrator of the EPA shall register a pesticide if he determines, *inter alia,* that it will perform its intended function without "unreasonably adverse effects" on man or the environment. A pesticide that is duly registered with the EPA must bear a label which contains EPA-approved warnings that the product is adequate to protect health and the environment. 7 U.S.C. § 136(q)(1)(G). Moreover, a label cannot contain language that is not approved by the EPA. 40 C.F.R. § 162.10(a) Pursuant to the regulations promulgated under FIFRA, the EPA not only specifies the particular warning language required, *see* 40 C.F.R. § 162.10(a)(1), but also the type size, *see* 40 C.F.R. § 162.10(a)(2)(ii)(A), color, *see* 40 C.F.R. § 162.10(a)(2)(ii)(B), and placement, *see* 40 C.F.R. § 162.10(a)(4), of the warning and all other specifications concerning labeling.

FIFRA is explicit as to the preemption of state authority to regulate pesticide labeling. It specifically provides that:

> Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v(b).

Thus, the statutory construction of FIFRA and its legislative history demonstrate a definitive congressional mandate that the regulation of pesticide labeling be controlled solely by the EPA. It is clear that Congress has legislated comprehensively, barring the states from interfering with the regulation of pesticide labels.

### 4. Judicial Precedent in Support of FIFRA's Preemptive Status

FIFRA's preemption of state law claims based on theories of negligent labeling and failure to warn was recognized in *Fitzgerald v. Mallinckrodt,* 681 F.Supp. 404 (E.D. Mich.1987). In *Fitzgerald,* plaintiff alleged personal injuries resulting from his exposure to defendant's chemical product, Calo–Clor, during the course of his employment. Calo–Clor is an inorganic mercury-based fungicide which was registered with the EPA pursuant to FIFRA.

In granting summary judgment to the defendant on the basis of preemption, the Court recognized that in enacting FIFRA "Congress had *enacted a comprehensive system* for the registration and labeling of pesticides." 681 F.Supp. at 406 (emphasis added). The Court determined that "any state law tort recovery based on failure to warn theory, would abrogate the Congress' intent to provide uniform regulations governing the labeling of pesticides." *Id.* at 407.

In reaching its conclusion that state tort claims were preempted by FIFRA, the Court in *Fitzgerald* considered and rejected an earlier contrary holding in *Ferebee v. Chevron Chemical Company,* 736 F.2d 1529 (D.C.Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Instead, the court relied on the recent holding in *Palmer v. Liggett Group, Inc.,* 825 F.2d 620 (1st Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989), where the First Circuit reasoned that a finding that a label is inadequate under a state tort theory,

> effectively compels the manufacturer to alter its warning to conform to different state law requirements as "promulgated" by a jury's findings.... This challenge to the federal warning label's sufficiency—surely contravenes the Act's policy of uniform labeling.... Indeed, it arrogates to a single jury the regulatory power explicitly denied to all fifty states' legislative bodies.

*Fitzgerald,* 681 F.Supp. at 407, (*quoting Palmer v. Liggett Group, Inc.,* 825 F.2d at 627–28). *See also Cipollone v. Liggett*

*Group, Inc.,* 789 F.2d 181 (3rd Cir.1986) (finding the Federal Cigarette Labeling and Advertising Act preempts state tort claims based on alleged inadequacy of warnings).

The reasoning of *Fitzgerald* applies in this action. To permit additional labeling requirements to be imposed under state common law "would effectively authorize the state to do through the back door" that which was expressly preempted through the front. *Fitzgerald,* 681 F.Supp. at 407.

Plaintiff's argument against preemption is primarily based upon *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529 (D.C.Cir. 1984), which held that FIFRA does not preempt state tort actions based on the inadequacy of an EPA-approved label. Plaintiff's Brief, pp. 4–6. Central to the decision in *Ferebee* was the determination that a state court jury verdict does not automatically "require" a manufacturer to change its labels, but rather, leaves to the manufacturer the "choice of how to react" to such jury verdict. *Id.* at 1542. ("Chevron can continue to use the EPA-approved label and can at the same time pay damages to successful tort plaintiffs such as Mr. Ferebee; alternatively, Chevron can petition the EPA to allow the label to be made more comprehensive.")

This Court must reject any argument holding that a state court jury verdict would merely leave to the manufacturer the "choice of how to react" to such jury verdict and would not automatically "require" a manufacturer to change its labels. As the First Circuit noted in *Palmer:*

> This *"choice of reaction"* seems akin to the free choice of coming up for air after being underwater. Once a jury has found a label inadequate under state law, and the manufacturer liable for damages for negligently employing it, it is unthinkable that any manufacturer would not immediately take steps to minimize its exposure to continued liability. *The most obvious change it can take, of course, is to change its label.*

*Palmer v. Liggett Group,* 825 F.2d at 627–28 (emphasis added).

This "choice of reaction" analysis was expressly considered and rejected in *Fitz-*

*gerald v. Mallinckrodt, Inc.,* 681 F.Supp. 404 (E.D.Mich.1987), in which it was held that FIFRA preempts state tort actions based on the inadequacy of an EPA-approved label. Most recently, the "choice of reaction" analysis has been rejected by the United States Supreme Court in *International Paper Company v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987).

*Ouellette* involved an action against a paper mill located in New York State that discharged effluents into Lake Champlain pursuant to a discharge permit issued under the Clean Water Act, 33 U.S.C. § 1251, *et seq.* Plaintiffs, residents of Vermont, filed suit against the paper mill alleging that the discharge constituted a common-law nuisance under Vermont law. A pre-emption argument was raised based upon the Clean Water Act's prohibition of state regulation of an out-of-state "source" of discharged effluents. The Supreme Court held that the Clean Water Act preempted the common-law nuisance action. In doing so, the Court noted:

> The affected state's nuisance laws would subject [International Paper] to the threat of legal and equitable penalties.... Such *penalties would compel the source* to adopt different control standards and a different compliance schedule from those approved by the EPA....

*Ouellette,* 479 U.S. at 495, 107 S.Ct. at 813 (emphasis added). Additionally, the Court held that:

> If the Vermont court ruled that respondents were entitled to the full amount of damages and injunctive relief sought in the complaint, *at a minimum* [International Paper] *would have to change* its methods of doing business and controlling pollution to avoid the threat of ongoing liability.... The inevitable result of such suits would be that Vermont and other states could do indirectly what they could not do directly—regulate the conduct of out-of-state sources.

*Id.* (emphasis added).

■ The Court finds, therefore, that a state court jury verdict would have the

effect of "regulating" the content of a warning label. Since FIFRA expressly preempts state law regulation of pesticide labeling, plaintiff's state law claims fail to the extent that they are based on defendants' failure to warn.

## C. *Fed.R.Civ.P. 8(c)*

Plaintiff argues that preemption is an affirmative defense and that defendants' failure to plead the defense in their answers constitutes waiver of the defense. The Court will first determine whether or not the defense of preemption constitutes an "affirmative defense" under Fed.R. Civ.P. 8(c) and then analyze whether or not the defense has been waived. Fed.R.Civ.P. 8(c) provides in pertinent part as follows:

> **(c) Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

Fed.R.Civ.P. 8(c). Defenses that are not specifically included in Fed.R.Civ.P. 8(c) may be considered affirmative defenses under the clause, "any other matter constituting an avoidance or affirmative defense." *Id.*

A panel of the Eleventh Circuit Court of Appeals recently stated the test for determining whether or not a defense is an "affirmative defense:"

> An affirmative defense has been described as "[a]ny matter that does not tend to controvert the opposing party's prima facie case as determined by the application of substantive law." 2A J. Moore, Moore's Federal Practice ¶ 8.27[3] (2d ed. 1985). In determining whether a particular argument is an affirmative defense, courts consider "the logical relationship between the defense and the cause of action," and the likelihood that the plaintiff will be unfairly surprised if

the defense does not appear in the pleadings. *Ingraham v. United States,* 808 F.2d 1075, 1079 (5th Cir.1987).

*Hassan v. U.S. Postal Service,* 842 F.2d 260, 263 (11th Cir.1988). *See also In Re Rawson Food Service, Inc.,* 846 F.2d 1343, 1349 (11th Cir.1988). In a diversity case, a state's substantive law will, therefore, determine whether or not a defense not enumerated in Fed.R.Civ.P. 8(c) will constitute an affirmative defense. *Troxler v. Owens-Illinois, Inc.,* 717 F.2d 530, 532 (11th Cir. 1983); *Freeman v. Chevron Oil Company,* 517 F.2d 201, 204 (5th Cir.1975). The Court will first determine whether or not preemption is part of plaintiff's *prima facie* case under Florida law. Second, the Court will determine the logical relationship between the defense of preemption and plaintiff's causes of action. Finally, the Court will make a determination whether or not the absence of the defense of preemption in a case of negligence or strict liability would unfairly surprise plaintiff.

### 1. *Prima Facie Case*

To establish a *prima facie* case for negligence in a products liability case, plaintiff must show 1) the existence of a duty on the part of the defendant to protect the plaintiff from injury or damage of which plaintiff complains, 2) the failure of the defendant to perform that duty, and 3) injury or damage to plaintiff proximately caused by such failure. *Blackton Building Supply Co. v. Garesche,* 383 So.2d 250, 251 (Fla. 5th DCA 1980). To establish a *prima facie* case of strict liability in tort, plaintiff must show 1) the manufacturer's relationship to the product in question, 2) the defect and unreasonably dangerous condition of the product, and 3) the existence of the proximate causal connection between such condition and the user's injuries or damages. *West v. Caterpillar Tractor Company, Inc.,* 336 So.2d 80, 87 (Fla.1976).

The Court finds that under Florida law, plaintiff need not establish the absence of preemption of state law by federal law as an element of her *prima facie* cases of either negligence or strict liability in tort. A showing of preemption does not tend to

controvert any element of plaintiff's *prima facie* case.

### 2. *Logical Relationship*

Defendants argue that preemption is merely a choice of law principle. Defendants cite cases in which actions requiring the construction of collective bargaining agreements are analyzed under federal labor law rather than state contract law. *See Billy Jack, Etc. v. New York Coat, Suit, Etc.,* 511 F.Supp. 1180 (S.D.N.Y. 1981). Plaintiffs agree that preemption is a choice of law principle, but that such a characterization still renders preemption an affirmative defense.

The Court finds that in this case, preemption is not merely a choice of law principle. Unlike the case of collective bargaining agreements, a finding of preemption in this case would annul all or part of the state-created cause of action *ab initio* and would not replace it with a parallel federal cause of action.[4] Although this Court agrees that in the labor law context the preemption defense acts as a choice of law principle, the same cannot be said in this case.

### 3. *Surprise*

Although plaintiff should have been on notice of the existence of federal statutes preempting state regulation of insecticide warning labels, such notice would not necessarily preclude a finding of unfair surprise. In this case, even if plaintiff were on notice of federal statutes preempting state regulation of warning labels, plaintiff could have relied on *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529 (D.C.Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), which held that FIFRA did not preempt state common law tort remedies. Defendants' decision to challenge *Ferebee* was based on *Fitzgerald v. Mallinckrodt, Inc.,* 681 F.Supp. 404 (E.D.Mich.1987), a case decided during the pendency of this litigation and subsequent

to this case first having been set for trial. Given plaintiff's reasonable understanding that federal law did not preempt state tort law prior to the decision of *Fitzgerald,* the Court finds that defendant's decision to assert the preemption defense would tend to surprise plaintiff.

### 4. *Preemption Is An Affirmative Defense In This Case*

Where a defense does not tend to controvert an element of plaintiff's *prima facie* case, where the defense tends to annul the cause of action and not merely provide a different legal standard, and where failure to plead the defense would tend to surprise a plaintiff, the defense must be considered an affirmative defense. Based on the foregoing factors, the Court finds that in this case, preemption constitutes an affirmative defense.[5]

## D. *Waiver Of The Defense Of Preemption*

As a general rule, if a party fails to raise an affirmative defense in its pleadings, that party waives its right to raise the defense at trial. *Hassan,* 842 F.2d at 260. If, however, a party can show that its opponent would not be prejudiced by the Court's hearing evidence on the issue at trial, the Court should permit the party to amend its pleadings. *Id.* Such an exception to the general rule is supported by the liberal federal pleading rules. *See* Fed.R. Civ.P. 15(b).

A party may not, however, raise an affirmative defense by reference thereto in a memorandum offered in support of a motion for summary judgment. *Funding Systems Leasing Corp. v. Pugh,* 530 F.2d 91, 96 (5th Cir.1976). *Sec also United States v. Burzynski Cancer Research Institute,* 819 F.2d 1301, 1307 (5th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1026,

---

4. The Court notes that federal courts including courts in the jurisdiction in which *Billy Jack* was decided are divided on the question of whether or not preemption is merely a choice of law principle, *see Sarnelli v. Tickle,* 556 F.Supp. 557, 561–62 (E.D.N.Y.1983), or what consequences derive from such a characterization of the preemption defense.

5. The Court notes that this finding is in agreement with the characterization of the preemption defense in Florida state courts. *See Wolmer v. Chrysler Corp.,* 474 So.2d 834, 839 (Fla. 4th DCA 1985), *quashed on other grounds* 499 So.2d 823 (Fla.1986) (in a negligence and strict liability case, it was defendant's burden to prove federal preemption).

98 L.Ed.2d 990 (1988). The district court's inclusion of the affirmative defense in the pretrial order could, however, cure defendant's failure to include the defense in its answer. *Jackson v. Seaboard Coast Line Railroad Co.*, 678 F.2d 992, 1012 (11th Cir.1982).

Defendants have neither moved to amend their answers or sought to have the affirmative defense included in the pretrial order by so indicating in the pretrial stipulation filed on November 6, 1987. The defendants have, however, stated in a footnote to their memorandum in support of their motion for summary judgment that in the event the Court found preemption to be an affirmative defense under Fed.R.Civ.P. 8(c), they requested leave to amend their answer or amend the pretrial stipulation. The Court does not construe this conditional statement in defendant's memorandum as a motion. The memorandum in which the statement appears is not captioned to indicate that it is a motion to amend pursuant to Fed.R.Civ.P. 10(a), Fed.R.Civ.P. 7(b)(2), or Rule 1.05(b), Local Rules Of The United States District Court For The Middle District Of Florida. Nor have the defendants filed a memorandum of law in support of the motion to amend as required by Rule 3.01(b), Local Rules Of The United States District Court For The Middle District Of Florida.

Despite the awkward manner in which the defendants manifested their desire to amend their answers or the pretrial stipulation, the Court will analyze whether or not plaintiff would be prejudiced by the Court's permitting defendants to raise the preemption defense at the present time. The Court notes that defendants' desire to amend their answers or the pretrial stipulation was fully discussed at the hearing on this motion for summary judgment. The issue was also fully briefed by the parties subsequent to the hearing.[6]

Plaintiff asserts that she will suffer prejudice from the defendants' asserting the affirmative defense of preemption at this time. Plaintiff argues that the affirmative defense raises factual issues on which plaintiff has not had an opportunity to conduct discovery. In particular, plaintiff argues that there is a material factual issue whether or not the EPA approved the defendants' labels. Plaintiff also argues that there is a material issue of fact whether or not the defendants gave the EPA all the information necessary for the EPA to properly warn consumers against the dangers of defendants' products. Finally, plaintiff argues that there is an issue of fact whether or not a damage award would cause the defendants to change their labels such that the damage award would constitute regulation. The Court will address each of these issues in turn.

#### 1. *Approval Of Defendants' Labels By The EPA*

Plaintiff argues that the defendants have not established that the EPA approved their labels. Apparently it is plaintiff's position that absent such approval, the preemption defense is not available to the defendants. Plaintiff specifically objects to the defendants' introduction of the affidavits of individuals who do not have personal knowledge of whether or not the EPA approved of defendants' labels.

The Court disagrees with plaintiff's implicit assumption that the preemption defense requires a showing that the EPA actually approved of defendants' labels. At most, such a showing would establish that the defendants violated federal regulations concerning labeling. Such a showing would not negate the fact that Congress has expressly preempted state regulation of labeling through a specific expression to that effect by statute. The Court finds that various affidavits submitted by the defendants to show that the EPA approved their labels are irrelevant to this proceed-

---

**6.** The awkward manner in which the defendants raised the question of amendments of the pleadings and the pretrial stipulation explains plaintiff's counsel's initial failure to oppose defendants' conditional motion to amend at oral argument. The Court assumes that plaintiff's counsel was unprepared to address the issue at that time. In his supplemental memorandum, after more careful examination of the law, plaintiff's counsel voiced strenuous opposition to amendment of the pleadings.

ing and have no bearing on this Court's finding of preemption.

### 2. *Necessary And Available Information*

The Court disagrees with plaintiff's argument that preemption requires defendants to show that they have provided to the regulatory agency all the necessary and available information on which to base a warning. A showing that the EPA approved defendants' labels based on inadequate information would not negate a finding that under the law of preemption, the EPA has the exclusive right to regulate those labels. A showing that the EPA based its decision on inadequate information would be appropriate if, for example, the agency approval of defendants' labels were offered for its collateral estoppel effect. This Court's finding of preemption is not based on collateral estoppel or on the agency's approval of the defendants' labels.

The Court's finding of preemption in this case is based on the fact that Congress expressly preempted state law. If Congress has taken away the ability of the states to regulate labels and assigned the regulation of labels to a federal agency, Congress has determined that such an assignment promotes the general welfare. Whether that federal regulatory agency carries out its function based on all available and necessary information is, therefore, irrelevant to a preemption inquiry. This Court cannot second guess the wisdom of that decision. A cause of action based on insufficient labeling would subvert the regulatory scheme for pesticide labeling. Such a cause of action would permit states to regulate labels in the guise of an action for damages and violate Congress's expressed mandate that state's should not regulate labels.

### 3. *Whether A Damage Award Constitutes Regulation*

Plaintiff argues that even if federal law has preempted state damage actions where a manufacturer would be caused to change its label, a damage award in this case would not cause the defendants to change their labeling. Plaintiff argues that the labels on defendants' pesticides have already been changed since the time of decedent's exposure and would not be changed further. In addition, plaintiff argues that at least one of the defendants no longer manufacturers the product at issue in this case.

This Court once again disagrees with plaintiff's understanding of the preemption defense. The statutory language and legislative history shows Congress's clear intention to preempt state law. Congress did not intend preemption to be decided on a case by case basis as plaintiff's argument would suggest. The Court found preemption based in part on a finding that a reasonable manufacturer of pesticides would tend to change its label subsequent to a damage awarded against it by a jury. Once the Court determines that damage awards tend to cause reasonable manufacturers to change their labels, it is irrelevant whether or not the defendants in this case are reasonable or indeed whether or not they continue to manufacture the product at all.

### 4. *Defendants Have Not Waived the Preemption Defense*

■ Based on the foregoing analysis, the Court finds that plaintiff would not be prejudiced by defendants' assertion of the preemption defense. The Court finds that the availability of the preemption defense in this case is a question of law, and that there are no factual issues on which plaintiff could conduct discovery that would alter the Court's finding of preemption. Plaintiff has had adequate opportunity to conduct legal research, file legal memoranda, and present the Court with oral argument on the issue. The Court finds, therefore, that the defendants have not waived the preemption defense and have properly asserted the defense on this motion. The Court will, therefore, on this date file a pretrial order recognizing the defendants' right to assert the preemption defense. It is, therefore, unnecessary for the defendants to file amended answers.

### E. *Exposure To Pesticides Prior To Enactment Of FIFRA*

■ Plaintiff also argues that the preemption defense should be unavailable to

the defendants in this case because it has alleged that the decedent was exposed to defendants' pesticides prior to the enactment of FIFRA in 1972. It is well settled that a court must apply the law in effect at the time it renders its decision, unless the award would cause a manifest injustice. *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). There is no indication that Congress intended 7 U.S.C. § 137(b) to apply only to cases arising after the enactment of the statute. The Court recognizes that this holding is a harsh result, however, the Court is bound by clear Congressional intent. Furthermore, whether or not the decedent was exposed prior to 1972 does not negate the fact that a jury award today would constitute regulation by causing manufacturers to change their labels. As stated above, Congress has expressly preempted such regulation by the states.

F. *Defectiveness And Unreasonable Dangerousness Under Non–Warning Theories*

In Florida the elements of a cause of action for strict liability in tort are 1) the manufacturer's relationship to the product in question, 2) the defective and unreasonably dangerous condition of the product, and 3) the existence of the proximate causal connection between such condition and the user's injuries or damages. *West v. Caterpillar Tractor Company, Inc.,* 336 So.2d 80, 87 (Fla.1976). The elements of a cause of action in a negligence products liability case are 1) the existence of a duty on the part of the defendant to protect the plaintiff from injury or damage of which plaintiff complains, 2) the failure of the defendant to perform that duty, and 3) injury or damage to plaintiff proximately caused by such failure. *Blackton Building Supply Co. v. Garesche,* 383 So.2d 250, 251 (Fla. 5th DCA 1980). In practice, the causes of action for strict liability in tort and negligence are similar, and both require proof that the defendant's product was defective and unreasonably dangerous. *See Witt v. Norfe, Inc.,* 725 F.2d 1277–79 (11th Cir.1984).

Florida law recognizes that the defective and unreasonably dangerous condition of a product can be established by showing that a product contained a manufacturing flaw, *see Matter of Standard Jury Instr. (Civil Cases),* 435 So.2d 782, 782–83 n. * (*citing* Restatement (Second) of Torts, § 402A, comment k, (1965)), or by showing that a product contained a design defect. Id. It appears that Florida courts have not spoken definitively as to whether or not a manufacturer's failure to warn can constitute a ground for finding a product defective and unreasonably dangerous. *See id.,* 435 So.2d at 783 n. *.

This Court assumes without deciding that Florida law would recognize that a manufacturer's failure to warn could at least under certain conditions render a product defective and unreasonably dangerous. Although this Court is aware that other jurisdictions have found that a manufacturer's failure to warn can constitute an independent ground for finding a product to be defective and unreasonably dangerous, *see* 2 *American Law of Products Liability 3d,* Part 5, Chapter 17, § 17:3, n. 9 (T.E. Travers ed. 1987), this Court's ruling should not be interpreted as any extension of Florida law on this issue. In light of the Court's conclusion that any cause of action based on the defendants' failure to warn is preempted, the existence of the cause of action in the first instance is immaterial to the Court's decision.

The defendants argue that plaintiff's theory for finding the products defective and unreasonably dangerous is based entirely on defendants' failure to warn and not on defective design or manufacturing flaw. Plaintiff argues that even if the Court finds that defendants' PCP containing products cannot be found to be defective and unreasonably dangerous based on defendants' failure to warn, the products can be found defective and unreasonably dangerous on a theory that the products contained a design defect or a manufacturing flaw.

The Court finds that plaintiff's theory for finding the products defective and unreasonably dangerous is not based exclu-

sively on defendants' failure to warn, but on a theory that products containing PCP have design defects and/or manufacturing flaws. *See* Amended Complaint ¶¶ 8(b), 8(c), 12(b), and 12(c). The Court will, therefore, grant defendant's motion for summary judgment only in part. To the extent that plaintiff's claims are based on the defective and unreasonably dangerous condition of defendants' products due to defendant's failure to warn, plaintiff's claims are preempted as a matter of law. To the extent that plaintiff's claims are otherwise based on the defectiveness or unreasonable dangerousness of defendants' product on theories of defective design or manufacturing flaw, the motion for summary judgment is denied.

The defendants also argue that even if their products are found to be defective and unreasonably dangerous, that they cannot be found liable under *Werner v. Upjohn Co.*, 628 F.2d 848 (4th Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981). The Court finds *Werner v. Upjohn Co.*, 628 F.2d 848 (4th Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981) distinguishable from this case. *Werner* found pursuant to Restatement (Second) of Torts § 402A, comment k, (1965), that a drug manufacturer is not to be held strictly liable for injuries caused by an unavoidably dangerous new drug if the warning is adequate. The Court finds that comment k deals expressly with new drugs whose production is justified for their life saving characteristics. The defendants have not demonstrated that their products, like life-saving drugs, are "unavoidably" dangerous. Furthermore, even if the defendants' products were found to be unavoidably dangerous, the defendants have not demonstrated that the defense of unavoidable dangerousness under comment k has not been preempted by FIFRA. Because the defense of unavoidable dangerousness under comment k requires that the defendants demonstrate that their warnings were adequate, such a defense could be found to constitute regulation of warning labels by state law, and would, therefore, be preempted by FIFRA. This Court states no view at this time as to whether or not the defense of unavoidable dangerousness has been preempted.

This Court stresses that this opinion does not address any issue not raised and briefed by the parties. In particular, the parties have not addressed the question whether or not the defendants can assert their warnings as a defense to plaintiff's remaining claims, or whether or not the assertion of a defense of warning is preempted by FIFRA.

Accordingly, it is

ORDERED:

1. That Reichold Chemicals, Inc.'s Motion For Summary Judgment, filed on October 21, 1988, and subsequently adopted by the other defendants, is granted in part and denied in part.

2. That to the extent that plaintiff's claims are based on the defective and unreasonably dangerous condition of defendants' products due to defendant's failure to warn, plaintiff's claims are preempted as a matter of law.

3. That to the extent that plaintiff's claims are otherwise based on the defectiveness or unreasonable dangerousness of defendants' product on theories of defective design or manufacturing flaw, the motion for summary judgment is denied.

4. That the Court's Opinion and Order, filed January 25, 1989, is hereby vacated.

DONE AND ORDERED.