959 F.2d 158
 34 ERC 1807, 60 USLW 2595, 22 Envtl.
L. Rep. 20,995,
Prod.Liab.Rep. (CCH) P 13,075
 ARKANSAS-PLATTE & GULF PARTNERSHIP, a Colorado general
partnership, Plaintiff-Appellee,
v.
VAN WATERS & ROGERS, INC., a Washington corporation; the
Dow Chemical Company, a Delaware corporation,
Defendants-Appellants.
National Agricultural Chemicals Association; Western
Agricultural Chemicals Association; National Pest Control
Association; National Agricultural Aviation Association;
Chemical Specialties; American Wood Preservers Institute;
Chemical Manufacturers Association; Product Liability
Advisory Council, Inc.; Trial Lawyers for Public Justice,
Amici Curiae.
 No. 91-1085.
 United States Court of Appeals,
Tenth Circuit.
 March 6, 1992.
 
 Richard R. Young (Brent E. Rychener and Walter H. Sargent, with him on the briefs) of Holme Roberts & Owen, Colorado Springs, Colo., for plaintiff-appellee.
 David A. Bailey (Dean R. Massey and Anne D. Weber, with him on the briefs) of Parcel, Mauro, Hultin & Spaanstra, P.C., Denver, Colo., for defendant-appellant, Van Waters & Rogers, Inc.
 C. Michael Montgomery (Peter S. Dusbabek, Montgomery, Green, Jarvis, Kolodny & Markusson, Denver, Colo., and Edward B. Fitzpatrick, III, The Dow Chemical Co., Midland, Michigan, with him on the briefs), of Montgomery, Green, Jarvis, Kolodny & Markusson, Denver, Colo., for defendant-appellant, The Dow Chemical Co.
 Lawrence S. Ebner, McKenna & Cuneo, Washington, D.C., Charles S. Siegel, Baron & Budd, P.C., Dallas, Tex., and Arthur H. Bryant and Priscilla Budeiri, Trial Lawyers for Public Justice, Washington, D.C., on the briefs, for amici curiae.
 Before LOGAN and MOORE, Circuit Judges, and ALLEY, District Judge.*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 In 1985 plaintiff Arkansas-Platte & Gulf (AP & G) succeeded to ownership of property in Colorado which previously had been occupied by a wooden fence-post treatment facility. That facility used a pentachlorophenol product, "Dowicide 7," from approximately 1960 to 1972. In 1987, an AP & G employee was diagnosed with pentachlorophenol poisoning. AP & G filed suit in 1989 against Van Waters & Rogers and The Dow Chemical Company as pentachlorophenol manufacturers or distributors, asserting Colorado state tort claims of negligence and strict liability based on a failure to warn of the product's environmental hazards. Dow and Van Waters & Rogers moved for summary judgment, asserting the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 (FIFRA), preempts state common law tort claims based on labeling. The district court denied summary judgment, holding there was no express or implied preemption by FIFRA of state tort claims based on negligent failure to warn. Arkansas Platte & Gulf Partnership v. Van Waters & Rogers, Inc., 748 F.Supp. 1474, 1482, 1484 (D.Colo.1990).
 
 
 2
 On motion of the defendants, the district court certified this question for interlocutory appeal. We may take interlocutory appeals when there is a substantial question of law and an immediate appeal will materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). We review motions for summary judgment de novo. City of Chanute, Kan. v. Williams Natural Gas Co., 955 F.2d 641, 647 (10th Cir.1992). See also Barnson v. United States, 816 F.2d 549, 552 (10th Cir.), cert. denied, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). If no genuine issue of material fact exists, we determine if the substantive law was correctly applied. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990), citing Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). There is no dispute of fact on the preemption issue before us. The parties disagree about (1) what body of FIFRA law should be applied, and (2) whether state law is preempted. We reverse the denial of summary judgment to the defendants, and hold FIFRA impliedly preempts state tort actions based on labeling and alleged failure to warn.
 
 I. APPLICABLE LAW
 
 3
 AP & G argues its claims originate from actions occurring from 1960 to 1972, and thus FIFRA provisions enacted in 1972 cannot affect defendants' pre-exposure duties. In the alternative, AP & G asserts neither the 1947 Act nor the 1972 amendments preempt state common law failure to warn claims, and the distinction is unimportant. We disagree with both arguments.
 
 
 4
 While pre-1972 FIFRA law concerning labeling is similar to the legal regime set forth in the 1972 amendments, it is not identical. FIFRA was enacted in 1947 as a licensing and labeling statute replacing the Insecticide Act of 1910. Ruckelshaus v. Monsanto Co., 467 U.S. 986, 991, 104 S.Ct. 2862, 2866, 81 L.Ed.2d 815 (1984). The 1947 Act gave the Agriculture Department authority to regulate, register, and label "economic poisons and devices." Kennan v. Dow Chem. Co., 717 F.Supp. 799, 804 (M.D.Fla.1989). There was no provision in the 1947 Act, however, specifically restricting state authority over pesticide labels.
 
 
 5
 In contrast, the 1972 amendments significantly strengthened the Act's registration and labeling standards, constructing a comprehensive regulatory regime. Wisconsin Pub. Intervenor v. Mortier, --- U.S. ----, 111 S.Ct. 2476, 2480, 115 L.Ed.2d 532 (1991), citing Ruckelshaus, 467 U.S. at 991, 104 S.Ct. at 2867. The 1972 provisions sought to "regulate the use of pesticides to protect man and his environment," and "extend Federal pesticide regulations to actions entirely within a single State." Kennan, 717 F.Supp. at 804, citing S.Rep. No. 92-838, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News 3993. Section 136v, addressing the "authority of states" provides:
 
 
 6
 (a) In general
 
 
 7
 A State may regulate the sale or use of any federally registered pesticide ... in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
 
 
 8
 (b) Uniformity
 
 
 9
 Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
 
 
 10
 7 U.S.C. § 136v(a), (b) (emphasis added).
 
 
 11
 A plain reading of the statute indicates an intent to maintain the traditional police powers of the states in the general grant of authority to "regulate the sale or use" of pesticides, § 136v(a), and a more specific intent to occupy the field in labeling and packaging, § 136v(b). Section 136v(c) further examines the states' prerogatives for registering pesticides for uses to meet special local needs. Clearly if the 1947 Act did not specifically restrict state authority over labeling, the 1972 amendments instruct a different interpretation of the preemption of state law.
 
 
 12
 Like the district court, we find plaintiff's contention that we should apply pre-1972 FIFRA law unavailing. AP & G relies on DeVargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991), arguing the application of current FIFRA law to past events would present a question of retroactivity. DeVargas addressed the retroactive application of statutory amendments which became effective during the pendency of that litigation. The court held in the absence of clear congressional intent instructing retroactive application, the law should be applied prospectively. DeVargas, 911 F.2d at 1388, 1393.[1]
 
 
 13
 If this case presented a question of retrospective application of a statute, we would indeed apply DeVargas. The issue here, however, does not concern retroactivity, but rather when plaintiff's cause of action arose. Our examination of the claim leads us to conclude it arose after 1972. AP & G acquired its property in 1985, found the property contaminated in 1987, and filed suit in 1989. Even were we to assume plaintiff's cause of action ripened prior to 1972, we have said it is "fundamental" that "a statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends are drawn from a time antecedent to the enactment." Lohf v. Casey, 466 F.2d 618, 620 (10th Cir.1972), citing Cox v. Hart, 260 U.S. 427, 43 S.Ct. 154, 67 L.Ed. 332 (1922). DeVargas is therefore not on point.
 
 
 14
 Furthermore, any jury award on claims arising from a duty to label or warn has an impact on FIFRA as it presently exists. As the court stated in Kennan v. Dow Chem. Co., "[w]hether or not the decedent was exposed prior to 1972 does not negate the fact that a jury award today would constitute regulation by causing manufacturers to change their labels.... Congress has expressly preempted such regulation by the states." 717 F.Supp. at 811. We therefore apply FIFRA as amended.
 
 II. PREEMPTION DOCTRINE
 
 15
 The preemption doctrine is based on the Supremacy Clause of Article Six of the Constitution. U.S. Const. art. VI, cl. 2. The Supremacy Clause invalidates state laws that "interfere with, or are contrary to" federal law. Hillsborough County, Fla. v. Automated Medical Labs., Inc., 471 U.S. 707, 712, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985), citing Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.). The burden of proving preemption is on defendants, who must show Congress meant FIFRA to preempt state tort claims based on failure to warn.
 
 
 16
 Preemption turns on the intent of Congress and on the effect of the conflicting rule. Intent may be express, Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), or inferred when Congress has chosen to occupy a particular field and "a scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' " Wisconsin Pub. Intervenor v. Mortier, 111 S.Ct. at 2481, citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Even when the field is not occupied, we may still infer preemption to the extent state and federal law conflict. This may be when "compliance with both federal and state regulations is a physical impossibility," Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963), when federal law implies a barrier to state regulation, Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986), citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).
 
 III. FAILURE TO WARN CLAIMS BASED ON LABELING
 
 17
 Several courts have considered whether FIFRA preempts state tort claims based on labeling and alleged failure to warn with conflicting results. The Eleventh Circuit held state common law tort labeling claims are impliedly preempted by FIFRA, 7 U.S.C. § 136v(b). Papas v. Upjohn Co., 926 F.2d 1019, 1024 (11th Cir.1991), petition for cert. filed, 59 U.S.L.W. 3825 (U.S. May 29, 1991) (No. 90-1837.)[2] While FIFRA explicitly instructs states can regulate the sale or use of federally registered pesticides, § 136v(b) precludes "any requirements for labeling or packaging in addition to or different from those required pursuant to this act." Id. (emphasis added). The Papas court reasoned jury awards of damages in these actions would result in direct conflict with federal law. Id. at 1025. We agree.
 
 
 18
 The Administrator of the EPA is charged under the statute with determining whether the pesticide "when used in accordance with widespread and commonly recognized practice ... will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(D). The EPA considers these adverse effects in determining what labels comply with FIFRA's requirements. 7 U.S.C. § 136a(c)(5)(B). The labels " 'must be adequate to protect the public from fraud and from personal injury and to prevent unreasonable adverse effects on the environment.' " Papas, 926 F.2d at 1024, citing 40 C.F.R. § 156.10(i)(1)(i).
 
 
 19
 State court damage awards based on failure to warn would constitute ad hoc determinations of the adequacy of statutory labeling standards. This would hinder the accomplishment of the full purpose of § 136v(b), which is to ensure uniform labeling standards. Papas noted even if a state tort action accomplished the same goal as the federal statutory provisions, federal law would still preempt the state action because "it attempts to achieve that purpose by a method which interferes with the federal methods." 926 F.2d at 1026, citing International Paper Co. v. Ouellette, 479 U.S. 481, 497, 107 S.Ct. 805, 813, 93 L.Ed.2d 883 (1987).
 
 
 20
 We decline to follow the D.C. Circuit's holding in Ferebee v. Chevron Chem. Co., 736 F.2d 1529 (D.C.Cir.1984), cert. denied, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), as suggested by AP & G. Ferebee involved a suit by the estate of an agricultural worker against Chevron alleging Chevron's failure to label paraquat with an adequate warning caused Mr. Ferebee's lung disease and subsequent death. The D.C. Circuit held the tort action was not preempted by FIFRA, basing its holding on the general grant of authority to the states in § 136v(a) to regulate the use of FIFRA-controlled products within state borders. Ferebee, 736 F.2d at 1541. We do not agree with the D.C. Circuit that because labeling can be part of the compensatory objectives of the state in regulating use, the general grant of § 136v(a) encompasses authority over labeling.[3] Section 136v(b) clearly narrows the general grant of § 136v(a) to exclude "requirements for labeling or packaging."
 
 
 21
 Ferebee distinguished between the "direct" injunction against the states' imposing labeling requirements and requirements which might be imposed through state common law. Id. The court reasoned the EPA's determination that Chevron's label was adequate "for FIFRA purposes does not compel a jury to find that the label is also adequate for purposes of state tort law...." Ferebee, 736 F.2d at 1540 (emphasis in Ferebee ). Ferebee further stated:
 
 
 22
 The verdict itself does not command Chevron to alter its label--the verdict merely tells Chevron that, if it chooses to continue selling paraquat in Maryland, it may have to compensate for some of the resulting injuries. That may in some sense impose a burden on the sale of paraquat in Maryland, but it is not equivalent to a direct regulatory command that Chevron change its label....
 
 Ferebee, 736 F.2d at 1541.[4]
 
 23
 We do not accept this "choice of reaction" analysis. A business choice between paying damages and changing the label is only notional. As the First Circuit stated in Palmer v. Liggett Group, Inc., 825 F.2d 620 (1st Cir.1987):
 
 
 24
 Once a jury has found a label inadequate under state law, and the manufacturer liable for damages for negligently employing it, it is unthinkable that any manufacturer would not immediately take steps to minimize its exposure to continued liability. The most obvious change it can take ... is to change its label.
 
 
 25
 Id. at 627-28. This choice cannot be consistent with FIFRA's preclusion of "any requirements for labeling or packaging in addition to or different from" the statutory mandate. 7 U.S.C. § 136v(b).
 
 
 26
 AP & G relies on Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), which stated there was no "irreconcilable conflict between the federal and state standards," and that the "imposition of a state standard in a damages action" would not "frustrate the objectives of the federal law." 464 U.S. at 256, 104 S.Ct. at 626. We distinguish Silkwood because it construes the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011-2296, a statute with substantially different regulatory and safety goals from FIFRA. The Atomic Energy Act contains no preemption provision and reserves significant authority to the states. "Further, the enactment and legislative history [of the Act] make clear Congress' explicit judgment that state common law damage actions for injuries caused by nuclear operations should be permitted to continue." Palmer v. Liggett Group, 825 F.2d at 628. In contrast, FIFRA does specify restrictions on state authority in labeling, and the legislative history of FIFRA is not clear on the question of state common law tort actions based on labeling and failure to warn.
 
 
 27
 Our thinking is bolstered by the Supreme Court's recent decision in Wisconsin Pub. Intervenor v. Mortier, --- U.S. ----, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). In Mortier, a Wisconsin town granted plaintiff a permit for pesticide spraying with certain use restrictions. Plaintiff claimed the town ordinance was preempted by FIFRA and state statute. The Supreme Court disagreed, holding FIFRA did not preempt political subdivisions from regulating the use of pesticides, "either explicitly, implicitly, or by virtue of an actual conflict." Id. 111 S.Ct. at 2482. The Court found FIFRA had not occupied the field of pesticide regulation in general or of local use permitting in particular. Id. at 2486. According to Mortier, the specific grant of authority in § 136v(a) ensures the states can "continue to regulate use and sales even where, such as with regard to the banning of mislabeled products, a narrow pre-emptive overlap might occur." Id. (emphasis added).
 
 
 28
 This "narrow preemptive overlap" is precisely the issue before us. In dicta addressing FIFRA's preemption of labeling claims, the Court stated:
 
 
 29
 [F]ield pre-emption cannot be inferred. In the first place, § 136v itself undercuts such an inference. The provision immediately following the statute's grant of regulatory authority to the States declares that "[s]uch State shall not impose or continue in effect any requirements for labeling and packaging in addition to or different from those required under" FIFRA. 7 U.S.C. § 136v(b). This language would be pure surplusage if Congress had intended to occupy the entire field of pesticide regulation.
 
 Id. 111 S.Ct. at 2486 (emphasis added).[5]
 
 30
 Thus, the Supreme Court reasoned Congress had not occupied the entire field of pesticide regulation, instead leaving intact the states' historic police powers to consider regional and local factors in regulating use. The Court indicated, however, Congress had impliedly preempted state regulation in the more narrow area of labeling. While the holding of Mortier is confined to the regulation of pesticides by local governments, id. 111 S.Ct. at 2479, we are nevertheless inclined to adopt its construction of FIFRA.[6]IV. SUMMARY
 
 
 31
 We therefore hold state tort actions based on labeling and alleged failure to warn are impliedly preempted by FIFRA as a matter of law. This is by virtue of the direct conflict posed with federal uniform regulation of pesticides, and because we believe Congress intended to occupy the field of pesticide labeling regulation. We base our holding on the language of § 136v, our rejection of the Ferebee court's "choice of reaction" analysis, and our understanding of the Supreme Court's construction of FIFRA in Mortier. We need not reach the district court's holding there is no express FIFRA preemption, and emphasize our holding only concerns the narrow issue of labeling. We do not address other state tort claims by AP & G which may be pending against the defendants.[7]
 
 
 32
 We therefore REVERSE the decision of the district court denying defendants' summary judgment on plaintiff's state tort claims based on labeling and failure to warn, and REMAND for further proceedings.
 
 
 
 *
 The Honorable Wayne E. Alley, United States District Court Judge for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 DeVargas found two lines of Supreme Court precedent, Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), and Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), were in "irreconcilable conflict" in applying statutes whose intent on retroactivity is unclear. DeVargas, 911 F.2d at 1390. Bradley held when congressional intent is unclear, " 'a court is to apply the law in effect at the time it renders its decision,' " except where application of the law would result in "manifest injustice." DeVargas, 911 F.2d at 1388-389, citing Bradley, 416 U.S. at 711, 94 S.Ct. at 2016. DeVargas found Bowen stated a contrary rule, that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." DeVargas, 911 F.2d at 1389, citing Bowen, 109 S.Ct. at 471. "Faced squarely with the issue [of] ... which presumption--Bradley or Bowen--is to govern," the DeVargas court found Bowen was supported by the weight of Supreme Court authority, and held the Civil Rights Restoration Act of 1987 did not apply retroactively. DeVargas, 911 F.2d at 1392-93
 
 
 [2]
 Compare Kennan v. Dow Chem. Co., 717 F.Supp. at 807 ("FIFRA expressly preempts state law regulation of pesticide labeling...."); and Fitzgerald v. Mallinckrodt, Inc., 681 F.Supp. 404, 406 (E.D.Mich.1987) ("Congress has expressly stated its intent to preempt any state labeling or packaging requirements different from or additional to those mandated by FIFRA," citing § 136v(b))
 
 
 [3]
 "Given this provision [§ 136v(a) ], Maryland might well have the power to ban paraquat entirely.... As a result, Maryland is entitled to control the use of paraquat for compensatory aims by holding Chevron liable for injuries that could have been prevented by a more adequate label." Ferebee, 736 F.2d at 1541
 
 
 [4]
 See also Ferebee, 736 F.2d at 1542 ("Compliance with both federal and state law cannot be said to be impossible: Chevron can continue to use the EPA-approved label and can at the same time pay damages to successful tort plaintiffs such as Mr. Ferebee; alternatively, Chevron can petition the EPA to allow the label to be made more comprehensive.")
 
 
 [5]
 See also 111 S.Ct. at 2487. "As we have ... made plain, local use permit regulations--unlike labeling or certification--do not fall within an area that FIFRA's 'program' pre-empts or even plainly addresses." (emphasis added)
 
 
 [6]
 Several district courts have considered preemption with respect to labeling and failure to warn claims since Mortier and followed its dicta. See, e.g., Young v. American Cyanamid Co., 786 F.Supp. 781 (E.D.Ark.N.D.1991); Worm v. American Cyanamid Co., Civ. A. No. HAR-90-1424, 1991 WL 144328 (D.Md. July 12, 1991) (unpublished opinion). Cf. Montana Pole & Treating Plant v. I.F. Laucks, 775 F.Supp. 1339 (D.Mont.1991) (adopting Ferebee and declining to follow Papas in case involving labeling of pentachlorophenol). In our opinion, Montana Pole wrongly relies on Mortier without considering the Court's distinction between preemption of state regulation of the sale and use of pesticides, and state authority over labeling. Montana Pole, 775 F.Supp. at 1344
 
 
 [7]
 See, e.g., Kennan, 717 F.Supp. at 812 (while finding express preemption of failure to warn claims in § 136v(b), court "state[d] no view as to whether ... defense of unavoidable dangerousness ha[d] been preempted"); Fisher v. Chevron Chem. Co., 716 F.Supp. 1283, 1289 (W.D.Mo.1989) (FIFRA preempts common law failure to warn claims, but not claims that herbicide sold in unreasonably dangerous condition)