William L. BINGHAM, Plaintiff,

v.

The TERMINIX INTERNATIONAL COM-
PANY, L.P., Allied Bruce Terminix
Company, Inc., Miles, Inc. and FMC
Corporation, Defendants.

No. 4:93–CV–44(L)(C).

United States District Court,
S.D. Mississippi,
E.D.

March 25, 1994.

Thomas Jones, Jr., Bourdeaux & Jones, Meridian, MS, George S. Monroe, II, George S. Monroe, Atty, Newton, MS, for plaintiff.

W. Price Elliott, Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, MS, Rebecca L. Wiggs, Watkins & Eager, Jackson, MS, James L. Moore, J. Greg Dow, Holtzman & Urquhart, Houston, TX, Brooks R. Buchanan, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

Tom S. LEE, District Judge.

Defendants Miles, Inc. and FMC Corporation have separately moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which motions are now before the court for consideration. Plaintiff William L. Bingham has responded to both motions and the court, having reviewed the memoranda of authorities submitted by the parties, together with attachments, concludes that the motions are well taken and should be granted.

Plaintiff, who apparently has been diagnosed with lung cancer, brought this action charging that his condition was caused by exposure to insecticides which were applied in his home from 1989 through 1991 to rid his home of termites.[1] Bingham named as defendants The Terminix International Company, L.P., and its local franchisee, Allied Bruce Terminix Company d/b/a Terminix Services of Meridian (Terminix or Terminix defendants), the extermination company which treated his house with the insecticides claimed to have caused his injury. He also sued Miles, Inc. and FMC Corporation, both of which manufactured insecticides alleged to have been used by the Terminix defendants in treating plaintiff's home for termites.

According to the allegations of his complaint, for a number of years, plaintiff was covered under a Termite Protection Plan with the Terminix defendants for the inspection and treatment of his home for termites. In October 1989, after Bingham discovered termites and termite damage in his home, Terminix began treating his home for termites. Later, in 1991, when plaintiff again discovered termites in his home, Terminix returned and again treated the home for the termite infestation. Plaintiff alleges that the pesticides applied by Terminix in the treatments for termites caused his injury and avers, more specifically, that as the result of his exposure to Pryfon, an organophosphorus insecticide manufactured by Miles, and to Permethrin, which is marketed by FMC under the trademark Dragnet FT, he sustained permanent injury to his lungs.

The complaint filed by plaintiff consists of four counts. The first count charges negligence by each of the defendants in marketing and applying products known to be unreasonably dangerous, failing to test and inspect the products to ascertain the dangers involved in their use, and failing to warn or to adequately warn of the dangers posed by exposure to these products.[2] Count 2 charges defen-

---

1. The action was originally filed in the Circuit Court of Newton County, Mississippi, but was thereafter timely removed by defendants under 28 U.S.C. § 1441 on the basis of diversity of citizenship jurisdiction, 28 U.S.C. § 1332.

2. The complaint alleges that defendants were negligent by each of the following acts and/or omissions:

    a. failure to advise Plaintiff of the toxic and dangerous characteristics of the chemicals they manufactured or used in the treatment of termites in the Plaintiff's home;

    b. failing and omitting to place any warnings or sufficient warnings on their container to warn Plaintiff and others of the dangers to health in coming in contact with said aforementioned dangerous products;

dants Miles and FMC with breaching implied warranties of merchantability, and in count 3, plaintiff alleges that Miles and FMC "deprived him of the opportunity of free choice as to whether or not to expose himself" to their products since they knew from medical and scientific data that the chemicals contained in their products were hazardous to the health and safety of persons who might be exposed to them, yet they "willfully withheld" such data from plaintiff and the public. Finally, the cause of action stated in count 4 is for strict liability in tort against FMC and Miles for marketing their products in a defective condition and unreasonably dangerous for their intended use.

Defendants Miles and FMC have moved for summary judgment contending that plaintiff's causes of action, to the extent they allege a failure to warn or failure to provide adequate labeling and instructions with their products, are preempted by the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136–136y (1982) (FIFRA). FIFRA is a comprehensive regulatory statute which governs the use, sale and labeling of pesticides. Under FIFRA, all pesticides sold or distributed in the United States must be registered with the Administrator of the EPA, which is vested with primary regulatory authority by FIFRA. 7 U.S.C. § 136a(a). In connection with its application for registration of its product, the manufacturer must submit proposed labeling and instructions for a pesticide, 7 U.S.C. § 136a(c)(1)(C), as well as data generated by studies prescribed by the EPA, including residual effect data, 40 C.F.R. § 158.240, reentry data, 40 C.F.R.

§ 158.390, and toxicological data, 40 C.F.R. § 158.340.

Upon receipt of the requisite information, the Administrator undertakes a comprehensive review of all pertinent data and determines whether it is sufficient to meet the requirements of FIFRA. 40 C.F.R. § 158.-80(a). Before a pesticide may be registered, the EPA must find that:

(A) its composition is such as to warrant the proposed claims for it;

(B) its labeling and other material required to be submitted comply with the requirements of this subchapter;

(C) it will perform its intended function without unreasonable effects on the environment; and

(D) when used in accordance with widespread and commonly-recognized practice it will not generally cause unreasonable adverse effects on the environment.

7 U.S.C. § 136a(c)(5). "Unreasonable adverse effects on the environment" is defined as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb). With respect to labeling, regulations promulgated by the EPA address the design and content of the label, *see* 40 C.F.R. § 156.10, and further require that the final printed labeling must be submitted before registration. Labeling is approved by the Administrator only if it is determined that the label is "adequate to protect the public from fraud and from personal injury and to

c. failing and omitting to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan concerning exposure to said aforementioned dangerous products;

d. inadequately warning, if in fact they warned at all, Plaintiff of the dangers to his health in coming in contact with and breathing said dangerous products used in Plaintiff's home for the treatment of termites;

c. failing to test and inspect said dangerous chemical products in order to ascertain the dangers involved in their use;

f. failing to remove said dangerous chemical products from the market and/or develop alternative products for use in the treatment of termites in homes such as the Plaintiff's upon ascertaining that such dangerous chemical

products were unreasonably dangerous and toxic and would cause permanent disease and injury to the body;

g. wilfully and recklessly using a potential cancer-causing product, i.e., Pryfon and Permethrin;

h. failing to warn Plaintiff of the foreseeable danger of inhaling and being otherwise exposed to said dangerous chemical products;

i. failing to warn and provide a safe environment for the use of said dangerous chemical products, if, in fact, such a safe environment can be devised;

j. that chemicals used were improperly applied;

k. other acts of negligence to be shown at trial.

prevent unreasonable adverse effects on the environment." 40 C.F.R. § 156.10(i)(1)(i). In this case, it is undisputed that the defendants' products which are at issue are and have at all relevant times been registered by the EPA under FIFRA, and that the labeling of those products has thus been approved by the EPA.

Congressional intent that FIFRA is to govern exclusively as to labeling and packaging of pesticides is reflected by Congress' having expressly preempted state regulation in those areas. FIFRA provides:

"Authority of States,"

(a) In General

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent that the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v. The subject of FIFRA preemption of products liability claims against pesticide and insecticide manufacturers has received considerable judicial attention in recent years. A few courts have held that FIFRA does not preempt state common law actions against manufacturers based on failure to warn theories of liability. By far, however, the vast majority of courts have concluded otherwise.

In 1992, the Supreme Court addressed a question of federal preemption respecting the labeling of cigarette packages. In *Cipollone v. Ligett Group, Inc.*, 505 U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Court concluded that the Public Health Cigarette Smoking Act of 1969 expressly preempted state law actions, whether based on state statutory law or common law. The preemption provision of that Act provided that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." 112 S.Ct. at 2617 (quoting § 5(b) of the Act). The Court concluded, first, that because Congress had spoken in the Act on the subject of preemption, the language of the statute necessarily established the scope of preemption; thus, if a cause of action did not fall within the purview of the statute's preemptive reach, preemption could not be accomplished by resort to principles of "implied" preemption. Having so concluded, the Court set about to determine whether the language chosen by Congress in defining the scope of the Act's preemption covered the failure to warn claims asserted by the plaintiffs. In *Cipollone*, no one questioned whether state statutory enactments relating to the labeling of cigarettes was preempted. The issue was whether it also covered common law damage suits, and on that question, the Court ruled that the phrase in the preemption statute, " '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." 112 S.Ct. at 2620.

Prior to *Cipollone*, one circuit court, and a number of district courts, had found that FIFRA did not preempt causes of action predicated on a manufacturer's failure to warn or to provide adequate warnings.[3] Most courts, though, had found such claims preempted, though there was no consensus as to whether the preemption was express or implied.[4] Since the Supreme Court's deci-

---

**3.** See *Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Notably, this is the only federal circuit court decision ever to have found that FIFRA does not preempt common law failure to warn claims. More pertinently, though, it has been observed by the Fifth Circuit that the analysis applied in *Ferebee* cannot be said to have survived *Cipollone*. See

*Stamps v. Collagen Corp.*, 984 F.2d 1416, 1424 (5th Cir.1993).

**4.** See, e.g., *Kennan v. Dow Chemical Co.*, 717 F.Supp. 799 (M.D.Fla.1989) (express); *Fitzgerald v. Mallinckrodt*, 681 F.Supp. 404 (E.D.Mich. 1987) (express); *Papas v. Upjohn Co.*, 926 F.2d 1019 (11th Cir.1991) (implied); *Fisher v. Chevron Chem. Co.*, 716 F.Supp. 1283 (W.D.Mo.1989) (implied).

# 520

sion in *Cipollone*, only a very few courts have persisted in the view that FIFRA does not preempt common law failure to warn claims.[5] All of the circuit courts that have considered the question, as well as most state and federal district courts, have recognized that any cause of action against a pesticide manufacturer which is predicated upon a failure to warn or failure to provide adequate warnings is preempted by FIFRA.[6] The reasoning of these courts is sound and compelling. This court is likewise convinced that common law tort causes of actions that are premised on failure to warn or to provide adequate warning with respect to pesticides are preempted by FIFRA.

The conclusion that FIFRA preempts any of plaintiff's claims charging a failure to warn or inadequate warning are preempted by FIFRA is supported not only by the reasoning of *Cipollone*, and the many courts that have reached this same conclusion, but also by the Fifth Circuit's decision in *Stamps v. Collagen Corp.*, 984 F.2d 1416 (5th Cir.1993). In *Stamps*, the question was whether the plaintiff's claims against a product manufacturer based upon defective design, inadequate

warnings and negligent failure to warn were preempted by the Medical Device Amendments of 1976 (MDA), 21 U.S.C. §§ 360c–360*l*. Under the MDA, prior to marketing their products, manufacturers are required to obtain approval from the Food and Drug Administration (FDA). As with FIFRA, the manufacturer of a medical device must submit a detailed application to the FDA, which includes information relating to product specifications, intended use, manufacturing methods and proposed labeling, and the FDA must accept or reject the application. And like FIFRA, the MDA contains an explicit preemption provision, which precludes states from "establish[ing] or continu[ing] in effect ... any requirement ... which is different from, or in addition to, any requirement applicable under this chapter to the device...." 21 U.S.C. § 360k(a). Addressing specifically the plaintiff's contention that the MDA does not preempt common law tort actions, the court in *Stamps*, relying in large part on *Cipollone*'s construction of the phrase "requirement or prohibition," concluded that the MDA's preemption of "any

**5.** See *MacDonald v. Monsanto Co.*, 813 F.Supp. 1258 (E.D.Tex.1993); *Couture v. Dow Chemical U.S.A.*, 804 F.Supp. 1298 (D.Mont.1992).

**6.** See *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir.1993) (FIFRA dictates preemption of any state common law cause of action resting on alleged failure to warn or communicate information about product through labeling); *King v. E.I. Du Pont De Nemours & Co.*, 996 F.2d 1346 (1st Cir.1993) (in light of *Cipollone*, FIFRA preempts state law tort claims based on defendants' alleged failure to warn about health hazards of herbicides they manufactured and sold); *Shaw v. Dow Brands*, 994 F.2d 364 (7th Cir.1993) (common law actions for labeling and packaging deficiencies cannot survive under FIFRA); *Arkansas–Platte & Gulf v. Van Waters & Rogers*, 981 F.2d 1177 (10th Cir.1993) (to extent that state tort claims require showing that defendants' labeling and packaging should have included additional, different, or alternatively stated warnings from those required under FIFRA, they would be expressly preempted); *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir.1993) (claims requiring showing that labeling or packaging should have included additional, or more clearly stated, warnings preempted by FIFRA); *Trinity Mountain Seed Co. v. MSD Agvet*, 844 F.Supp. 597 (D. Idaho 1994) (breach of warranty and strict liability claims based on statements on pesticide label preempted by FIFRA); *Quad R. Farms v. Ameri-*

*can Cyanamid Co.*, 840 F.Supp. 694 (D.Minn. 1993) (FIFRA expressly preempts labeling-based negligence claims); *Kinser v. Ciba–Geigy Corp.*, 837 F.Supp. 217 (W.D.Ky.1993) (FIFRA expressly preempts state common law negligent failure to warn as well as strict liability claims that turn on inadequate warning); *DerGazarian v. Dow Chem. Co.*, 836 F.Supp. 1429 (W.D.Ark.1993) (FIFRA expressly preempts plaintiffs' failure to warn of the dangers in the use of and to properly label insecticide); *Kolich v. Sysco Corp.*, 825 F.Supp. 959 (D.Kan.1993) (state law causes of action for failure to warn preempted, regardless of whether plaintiff's causes of action arise from state statutes or common law); *Levesque v. Miles, Inc.*, 816 F.Supp. 61 (D.N.H.1993) (because EPA–approved label was affixed to defendant's product, FIFRA expressly preempted plaintiffs' failure to warn claim); *Wright v. Dow Chem. Co.*, 845 F.Supp. 503 (M.D.Tenn.1993) (FIFRA preempts common law damage actions that arise from labeling claims); *Casper v. E.I. Du Pont De Nemours & Co.*, 806 F.Supp. 903 (E.D.Wash. 1992) (plaintiff's claims alleging failure to warn and inadequate labeling expressly preempted by FIFRA); *Gibson v. Dow Chem. Co.*, No. 92–30, 1992 WL 404681 (E.D.Ky. Oct. 19, 1992) (FIFRA preempts failure to warn causes of action under state law); cf. *Burke v. Dow Chemical Co.*, 797 F.Supp. 1128 (E.D.N.Y.1992) (under express preemption analysis, defendants entitled to "some preemption protection").

requirement" extended to common law claims: "It would be anomalous to interpret the MDA differently from the Public Health Cigarette Smoking Act solely on the basis that while they both employ 'requirement,' the MDA omits 'prohibition.'" 994 F.2d at 1421.[7]

■ Having concluded that FIFRA preempts plaintiff's claims based on a failure to warn or inadequacy of warnings, it becomes necessary to examine each of plaintiff's claims to determine which of them fall into this category. *See Cipollone,* 505 U.S. at ——, 112 S.Ct. at 2621 ("we must look to each of petitioner's common law claims to determine whether it is in fact preempted"). In *Cipollone,* the Court explained that in answering this question, "we ask whether the legal duty that is the predicate of the common law damages action constitutes" a requirement for labeling or packaging that is in addition to or different from those required by FIFRA. *Cipollone,* 505 U.S. at ——, 112 S.Ct. at 2621; 7 U.S.C. § 136v(b). Plaintiff's claims are preempted only "to the extent that [they] require a showing that defendants' labeling and packaging should have included additional, different, or alternatively stated warnings from those required under FI-FRA." *Arkansas–Platte & Gulf v. Van Waters & Rogers,* 981 F.2d 1177, 1179 (10th Cir.1993). Some of the claims alleged in the complaint obviously fit this description. The cause of action alleged by count three is based on defendants' having "willfully withheld" from and having "deprived Plaintiff" of medical and scientific data indicating that their products were hazardous. This count is purely based on a failure to warn and must be dismissed as preempted.

■ Count one of the complaint charges various acts and omissions by defendants which are alleged to constitute negligence. Most of the acts and/or omissions identified relate to defendants' failure to warn or failure to provide adequate warnings of the dangers and proper use of their products,[8] and count one, to the extent that it is based on these matters, is preempted. Some of the negligence allegations, however, are not so easily classified as "failure to warn" claims. Plaintiff alleges that defendants were negligent in "failing to test and inspect said dangerous products in order to ascertain the dangers in their use."[9] Though defendants insist that this claim is preempted by FI-FRA, the court cannot agree.

The court reiterates that the preemptive scope of FIFRA extends only to claims relating to labeling and packaging. The argument is made that a challenge to the adequacy of testing may implicate labeling concerns since additional testing might disclose the need for further warnings. The court is unwilling to read the preemption provision so broadly, particularly in light of the presumption against preemption which counsels a narrow construction of preemption provisions such as that at issue here. *Cipollone,* 505 U.S. at ——, 112 S.Ct. at 2618. Plaintiff's testing claim, therefore, survives defendants' motions. *See Worm,* 5 F.3d at 747 (while

---

**7.** Despite defendants' citation to and discussion of *Stamps* in their memoranda, plaintiff's responsive brief not only contains no mention of the case, but plaintiff goes so far as to argue points laid to rest by *Stamps.* For example, plaintiff argues that the analysis of the Court in *Cipollone* "clearly distinguished between 'requirements' being positive enactments of state legislatures and 'prohibitions' being common law court damage actions." Plaintiff thus reasoned that since FIFRA precludes states only from imposing "requirements," and does not preclude "prohibitions," then it must be the case that FIFRA does not preclude common law damage actions. Cases which have held that "the word 'requirement' without 'or prohibition'" sweeps broadly enough to include common law damage actions, plaintiff argues, "fly in the face of express congressional intent."

Plaintiff's reasoning on this point apparently was derived, at least in part, from *MacDonald v. Monsanto,* 813 F.Supp. 1258, 1261 (E.D.Tex. 1993), to which plaintiff refers as the only case in the Fifth Circuit addressing FIFRA preemption. While that may have indeed been true (until today), there is no question but that the Fifth Circuit, since *MacDonald,* has in *Stamps* expressly rejected the notion that "requirement" does not also encompass common law tort claims.

**8.** *See supra* note 2.

**9.** He also alleges that defendants were negligent in marketing known cancer-causing products. Miles and FMC do not contend that this claim is preempted by FIFRA, but have moved for summary judgment as to this aspect of plaintiff's claims on another basis, discussed *infra.*

claims resting on failure to warn or communicate information about product through labeling are preempted, claims for negligent testing, manufacturing and formulating are not preempted); *DerGazarian v. Dow Chem. Co.*, 836 F.Supp. 1429, 1447 (W.D.Ark.1993) (FIFRA does not preempt plaintiffs' claim that defendant failed to use ordinary care in formulation, inspection and testing of product); *Wright v. Dow Chem. Co.*, 845 F.Supp. 503 (M.D.Tenn.1993) (FIFRA does not preempt non-labeling claims for defective design and failure to properly test and study the pesticides in question); *cf. Cipollone*, 505 U.S. at ——, 112 S.Ct. at 2622 (Public Health Cigarette Smoking Act of 1969 did not preempt claims that relied solely on defendants' testing or research practices or other actions unrelated to advertising or promotion).

■ In addition to his negligence claims, plaintiff alleges in counts two and four, respectively, causes of action for breach of implied warranties of merchantability with respect to defendants' products and strict liability. If those claims were predicated on labeling or packaging deficiencies, then FIFRA preemption would cover them. *See Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir.1993) (claims of breach of implied warranty of merchantability and strict liability based on claims of inadequate labeling preempted); *Kinser v. Ciba–Geigy Corp.*, 837 F.Supp. 217, 219 (W.D.Ky.1993) (strict liability on basis of producer's failure to adequately warn of a risk associated with the product's intended use preempted by FIFRA). However, in the absence of any indication in the complaint or other papers before the court that either of these claims is premised on statements made or not made on the pesticide label, the court cannot conclude that either is preempted. *See Wright v. Dow Chem. Co.*, 845 F.Supp. 503 (M.D.Tenn.1993) (FIFRA does not preempt non-labeling claims for breach of implied warranty of

merchantability); *Fisher v. Chevron Chem. Co.*, 716 F.Supp. 1283 (W.D.Mo.1989) (though FIFRA preempted state common law claims for failure to adequately warn, it did not preempt state common law claims alleging that herbicide was sold in unreasonably dangerous defective condition, i.e., strict liability); *cf. DeHaan v. Whink Prods. Co.*, No. 91 C 0014, 1994 WL 24322 (N.D.Ill. Jan. 26, 1994) (whereas Federal Hazardous Substances Act, which is "effectively identical" to FIFRA, preempted failure to warn claims, it did not preempt state law claim for breach of implied warranty of merchantability); *Casper v. E.I. DePont de Nemours & Co.*, 806 F.Supp. 903, 909 (E.D.Wash.1992) (claim for breach of implied warranty of fitness for particular purpose not preempted).

In summary, the court concludes that plaintiff's claims for failure to warn and insufficient warnings are preempted by FIFRA and must be dismissed. Plaintiff's remaining claims, including his claims for inadequate testing, strict liability and breach of implied warranties of merchantability are not preempted and survive the present motion.

■ In his negligence count, plaintiff seeks to impose liability against defendants for "willfully and recklessly using a potential cancer-causing product, i.e., Pryfon and Permethrin." Miles and FMC have moved for summary judgment as to this claim on the basis that their products are not "cancer-causing." In support of their motions, defendants have submitted affidavits of toxicologists who state that the products at issue are not carcinogens.[10] In response to defendants' motion, plaintiff has submitted an affidavit of Dr. Arthur Hume, a toxicologist and professor in the Department of Pharmacology and Toxicology at the University of Mississippi Medical Center (UMC) and the Director of UMC's Poison Control Service. Dr. Hume attests in his affidavit that he is famil-

---

**10.** Dan Van Goetham, a toxicologist with Miles, states in his affidavit, "I am familiar with the health effects of chronic and acute exposure to Pryfon 6 as revealed by numerous studies. Exposure to Pryfon 6 does not cause cancer." In his affidavit, Dr. Martin Fletcher, a toxicologist with FMC, states that he is familiar with the health effects of Permethrin, the active ingredient in FMC's product, Dragnet FT, and that "Permethrin's potential for induction of oncogenicity in experimental animals is low and the likelihood of oncogenic effects in humans is nonexistent or extremely low. There have been no reports that Dragnet FT or Permethrin has caused cancer in humans."

iar with the defendants' products and that to his knowledge, neither Permethrin nor Pryfon "ha[s] been tested for carcinogenicity properties in humans nor [have they] been tested in the concentration used in treating Plaintiff's home, nor [have they] been tested in the presence of other chemicals ... which [they] might enhance or be enhanced in carcinogenic activities." Plaintiff argues that in light of Dr. Hume's affidavit, there exists the "immeasurably significant" disputed factual issue of whether defendants' products cause cancer. That, however, simply is not so. Indeed, Dr. Hume's affidavit not only does not create an issue of fact on the issue, but appears to undercut plaintiff's cause of action. Dr. Hume does not opine that defendants' products cause cancer; to the contrary, he states that there has *never been any testing* of these products to determine whether they may cause or contribute to cancer. In other words, according to Dr. Hume's own affidavit, there is no proof that defendants' products cause cancer. Consequently, plaintiff's claim that defendants' "willfully and recklessly" distributed "cancer-causing" products, must fail.[11]

Based on the foregoing, it is ordered that defendants Miles' and FMC's motions for summary judgment are granted in part and denied in part as set forth herein.

ORDERED.

---

11. Logically, it would seem that the absence of proof of causation would impact plaintiff's remaining claims, as well. However, the sole basis for defendants' motion as to those other claims is FIFRA preemption.