**Tom and Joyce MILLER, d/b/a Sunshine Farms of Macon, Mississippi, Plaintiffs,**

v.

**E.I. Du PONT de NEMOURS AND COMPANY, Defendant.**

**Civ. A. No. 4:93–CV–26(L)(N).**

United States District Court,
S.D. Mississippi,
Eastern Division.

Nov. 28, 1994.

---

Michael H. Steele, Steele & Shaw, Kosciusko, MS, for plaintiffs.

Alexander A. Alston, Jr., Alston, Ruthrford, Tardy & Vanslyke, Jackson, MS, for defendant.

*MEMORANDUM OPINION*
*AND ORDER*

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant E.I. Du Pont de Nemours

& Company (Du Pont) for summary judgment or, in the alternative, for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Tom and Joyce Miller, d/b/a Sunshine Farms of Macon, Mississippi, have responded in opposition to Du Pont's motion. The court has considered the memoranda of authorities, together with attachments, submitted by the parties and concludes, for the reasons that follow, that Du Pont's motion for summary judgment should be denied but that Du Pont is entitled to the entry of partial summary judgment.

The plaintiffs, Tom and Joyce Miller, own and operate Sunshine Farms of Macon, Mississippi, and were engaged in the business of growing strawberries, blackberries, plant cuttings and other fruits and vegetables for sale. In this action, plaintiffs allege that over a three-year period, beginning in 1990 and continuing through 1992, their strawberry and blackberry plants began to yellow, wither, languish and ultimately perish as a result of their having applied to those plants a fungicide manufactured by defendant, Benlate DF, which they contend that Du Pont had allowed to become contaminated with a herbicide, atrazine. They further allege that their blackberry and muscadine "cuttings," which they sold for profit through a mail-order operation, were likewise destroyed as a result of their use of adulterated Benlate. Plaintiffs charge in their complaint that as a consequence of their use of defendant's defective Benlate DF, they lost nearly ten acres of strawberry production for every year from 1990 forward, in addition to three acres of blackberry production for the years 1991 through 1993. They further allege that they have lost substantial sales and profits from their muscadine and blackberry cuttings and have suffered the "virtual destruction" of their mail-order plant business. Finally, they allege that the atrazine-contaminated Benlate has poisoned the soil of their strawberry fields, rendering those fields useless.

Plaintiffs have alleged a number of claims for relief against Du Pont which they denominate as follows: negligence, res ipsa loquitur, chattel made under dangerous design or plan, strict liability, negligence per se, misrepresentation, infliction of intentional tort, nuisance and trespass, and breach of express and implied warranties. Defendant has moved for summary judgment on all of the claims, contending that it is entitled to judgment as a matter of law since plaintiffs cannot establish that the cause of their losses was contaminated Benlate. Du Pont has moved alternatively for partial summary judgment with respect to various of the claims which plaintiffs have alleged. Each of its arguments is considered below.

 Du Pont contends that summary judgment must be granted in toto inasmuch as plaintiffs cannot prove that their crop or plant losses were caused by Benlate. In support of this assertion, Du Pont points out that for each of the years that plaintiffs now claim they sustained losses as a consequence of their use of contaminated Benlate, plaintiffs submitted claims to and received disaster relief payments from the United States Department of Agriculture based on their claim that their crop losses were caused by excessive amounts of rain. Du Pont argues that plaintiffs, by virtue of their having asserted to the United States government that their losses were caused by too much rain, have "introduced such uncertainty into the issue of causation" that they cannot establish any other cause for their losses, including possible Benlate contamination, with reasonable definiteness. See *Magnolia Petroleum Co. v. Williams,* 222 Miss. 538, 76 So.2d 365, 367 (1954) (plaintiff must prove "with reasonable definiteness" that party from whom recovery is sought actually caused the damage). In essence, Du Pont submits that since the plaintiffs themselves have asserted two possible causes of their losses, excessive rain and contaminated Benlate, then a jury, in order to find for the plaintiffs, would be forced to resort to speculation and conjecture since plaintiffs cannot show that one of these more likely caused their losses. This, Du Pont argues, will necessarily preclude plaintiffs from establishing causation with reasonable definiteness.

In response to defendant's motion, plaintiffs have presented evidence to substantiate their claim that their crop damage resulted from their use of atrazine-contaminated Ben-

late in the form of an affidavit and report of their expert, Dr. Carl Whitcomb, in which he opines that "it is highly probable that the atrazine in the Benlate contributed to the demise of [the plaintiffs'] crops." Plaintiffs do acknowledge that they filed claims for disaster relief for crop damage resulting from excessive rain. They explain, however, that at the time they prepared and filed their disaster relief claims, they did not know that their loss was caused by their having used adulterated Benlate and that indeed, they believed—mistakenly, as it turned out—that the condition of their crop must have been caused by too much rain.

Plaintiffs maintain that their evidence is sufficient to create a genuine issue of material fact with respect to causation, and the court agrees. In the court's opinion, notwithstanding plaintiffs' attestation to the government that their crop damage resulted from excessive rain, if a jury were to credit Dr. Whitcomb's conclusions regarding causation, that jury could find "with reasonable definiteness," *see Magnolia Petroleum Co.,* 76 So.2d at 367, that the damage, in fact, resulted from contaminated Benlate.[1] That is to say, given the evidence they have presented, plaintiffs would be entitled to have a jury weigh the evidence presented by the parties and reach its own conclusion as to causation.[2] Du Pont's summary judgment motion will therefore be denied.

Du Pont asserts that even if summary judgment is not granted, it still is entitled to partial summary judgment on plaintiffs' claims for misrepresentation, failure to warn and breach of implied warranty on the basis that those claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136–136y (1982) (FIFRA), since each one rests on the theory that Du Pont's Benlate DF label was inadequate and defective. FIFRA, a comprehensive and detailed regulatory scheme which governs the use, sale and labeling of pesticides,[3] contains a preemption provision which provides:

> A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent that the regulation does not permit any sale or use prohibited by this subchapter.
>
> * * * * * *
>
> Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v. This court has earlier considered the preemptive effect of § 136v and held that "common law tort causes of action that are premised on failure to warn or to provide adequate warning with respect to pesticides are preempted by FIFRA." *Bingham v. Terminix International Co.,* 850 F.Supp. 516, 520 (S.D.Miss.1994). The Fifth Circuit, too, has recently held that "FIFRA preempts conflicting state common law concerning the improper handling of herbicides." *McDonald v. Monsanto Co.,* 27 F.3d 1021 (5th Cir.1994); *see also In re DuPont–Benlate Litigation,* 859 F.Supp. 619, 622 (D.P.R. 1994) ("FIFRA preempts any state common law cause of action that rests on an alleged failure to warn to convey information about a product through its label."). Accordingly, FIFRA will preempt any of plaintiffs' claims that are based on a failure to warn or inadequacy of warnings.[4] The court's charge,

---

1. In its rebuttal brief, Du Pont has undertaken to show that plaintiffs' explanation of why they attributed their crop loss to too much rain in their requests for disaster relief is not credible by pointing out that plaintiffs had already initiated and were pursuing a claim against Du Pont at the time they filed some of those claims with the government. The state of plaintiffs' knowledge is likewise a subject as to which there are disputed issues of fact.

2. Du Pont states that if summary judgment is denied, it will present evidence at trial that regardless of what else may have caused or contributed to plaintiffs' damage, Benlate was not the culprit since the level of atrazine contamina-

tion in the Benlate was not sufficient to cause the loss of plaintiffs' plants.

3. The court refers to the more generic pesticide to include insecticides, herbicides and fungicides.

4. Before a pesticide may be registered, the EPA must find that:

 (A) its composition is such as to warrant the proposed claims for it;

 (B) its labeling and other material required to be submitted comply with the requirements of this subchapter;

 (C) it will perform its intended function without unreasonable effects on the environment; and

then, is to "examine each of plaintiff[s'] claims to determine which of them fall into this category." *Bingham,* 850 F.Supp. at 521 (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), wherein the Court stated, "[W]e must look to each of petitioner's common law claims to determine whether it is in fact preempted"). In *Cipollone,* the Court explained that in resolving this issue, the court must "ask whether the legal duty that is the predicate of the common law damages action constitutes" a requirement for labeling or packaging that is in addition to or different from those required by FIFRA, *Cipollone,* 505 U.S. at ——, 112 S.Ct. at 2621, because the plaintiffs' claims "are preempted only 'to the extent that [they] require a showing that defendants' labeling and packaging should have included additional, different, or alternatively stated warnings from those required under FIFRA.'" *Bingham,* 850 F.Supp. at 521 (quoting *Arkansas–Platte & Gulf v. Van Waters & Rogers,* 981 F.2d 1177, 1119 (10th Cir.1993)).

Of the myriad of claims alleged by plaintiffs, Du Pont's assertion of FIFRA preemption is limited to their alleged causes of action for misrepresentation, intentional infliction of tort (to the extent the claim encompasses an allegation of failure to warn), and breach of implied warranty. These will be considered seriatim:

■ (1) *Misrepresentation.* Plaintiffs' allegations of misrepresentation are that Du Pont

expressly represented to the public and, more particularly, to Plaintiffs that the Benlate DF fungicide in question was manufactured to comply with design specifications established for production of a safe product and that the aforesaid representation was a misrepresentation inasmuch as the said fungicide was not manufactured to comply with appropriate design specifications but on the other hand was formulated, made, sold, designed and manufactured in a manner calculated to cause injuries to the Plaintiffs.... The Defendant therefore made unto the public, including your Plaintiffs, misrepresentation of material facts concerning the character and quality of the aforesaid Benlate DF....

What, precisely, is meant by these allegations is not altogether clear. It appears, though, that plaintiffs are charging that Du Pont misrepresented, presumably through its labeling, that its product conformed to certain specifications when, in fact, the product did not conform to the label specifications. Such a claim would fall within FIFRA's preemptive reach.

■ (2) *Intentional Infliction of Tort.* In this count, plaintiffs allege, *inter alia,* that Du Pont "failed to properly warn of the dangers attendant upon said adulterated and/or otherwise defective Benlate DF and failing to provide a proper fungicide for use as advertised." By way of explanation, they charge that Du Pont was aware of the risk attendant to the use of an "adulterated and otherwise defective fungicide," and that Du Pont became aware as early as 1989 that its Benlate DF was contaminated with atrazine, yet it "failed to take any proper steps to diminish the dangers to Plaintiffs posed by their use of same, in that Du Pont told suppliers to use what was on the market." In other words, they allege that despite Du Pont's knowledge that its product was adulterated and its further knowledge of the danger inherent in that condition, it failed to properly recall the product and failed to properly take measures calculated to inform

---

(D) when used in accordance with widespread and commonly-recognized practice it will not generally cause unreasonable adverse effects on the environment.

7 U.S.C. § 136a(c)(5). It is undisputed that Benlate, Du Pont's fungicide, was at all relevant times registered by the EPA under FIFRA, and that the labeling of Benlate was thus approved by the EPA.

 As this court explained in *Bingham,*

 With respect to labeling, regulations promulgated by the EPA address the design and content of the label, *see* 40 C.F.R. § 156.10, and further require that the final printed labeling must be submitted before registration. Labeling is approved by the Administrator only if it is determined that the label is "adequate to protect the public from fraud and from personal injury and to prevent unreasonable adverse effects on the environment." 40 C.F.R. § 156.10(i)(1)(i).

*Bingham,* 850 F.Supp. at 518.

plaintiffs of the dangers posed by the product.

Obviously, this claim charges a failure to warn. However, the court would reiterate that a claim is preempted by FIFRA only to the extent that it requires proof that Du Pont's labeling and packaging of Benlate DF should have included additional, different, or alternatively stated warnings from those required under FIFRA. *Arkansas–Platte,* 981 F.2d at 1119. One court recently addressed this precise preemption issue and concluded:

> [W]e see no reason why state law could not require DuPont to have ensured proper notice to the plaintiffs of the existence of the alleged defect. Litigation of state tort actions which would require pesticide manufacturers to notify consumers of the contamination of certain products would not interfere with FIFRA's requirement that pesticides in their intended form be packaged and labeled only as mandated by federal law.

*In re DuPont–Benlate Litigation,* 859 F.Supp. 619, 622–23 (D.P.R.1994). The court is in complete agreement with this conclusion. The issue raised by plaintiffs' intentional tort allegation is whether Du Pont, if it had knowledge that its Benlate DF had become adulterated with atrazine, was required to warn its distributors and customers of that fact by some means. This simply is not, in the court's opinion, a claim relating to defective labeling. Again, while plaintiffs do suggest that Du Pont should have taken steps to warn of the fact of and dangers associated with the atrazine contamination of its Benlate DF, nothing about this claim implies that Du Pont should have included additional, different, or alternatively stated warnings on the Benlate product label.

■ (3) *Breach of Implied Warranty.* The same cannot be said as to plaintiffs' breach of implied warranty claim. In count 9, their breach of warranties count, plaintiffs allege that defendant breached the implied warranties of merchantability and of fitness for a particular purpose because, *inter alia,*

the product "was not adequately contained, packaged or labeled so as to fulfill the requirements thereof but instead were warranted to be of merchantable quality when in fact this was not so...." State law claims for breach of implied warranties are preempted by FIFRA "to the extent that they involve alleged inadequacies of federally approved packing or labeling." *In re Du-Pont–Benlate Litigation,* 859 F.Supp. at 623 (citing *Papas v. Upjohn Co.,* 985 F.2d 516, 520 (11th Cir.1993)). Thus, "[a]ny argument that DuPont failed to warn that unadulterated Benlate was not fit for ordinary or a particular purpose use" or was not merchantable is preempted. *Id.* Accordingly, to the extent that plaintiffs' breach of implied warranty claims are premised on claims of inadequate labeling, they are preempted.

■ In addition to its FIFRA preemption arguments regarding plaintiffs' charges of preemption, Du Pont asserts that count five, by which plaintiffs seek recovery for an alleged FIFRA violation, must be dismissed since FIFRA provides no private right of action for its violation. In response to defendant's motion, plaintiffs assert that they have not attempted to allege a cause of action under FIFRA, but rather have premised their charge of negligence per se on defendant's violation of a certain provision of FIFRA which proscribes the sale of an adulterated product. More specifically, they allege that defendants sold an adulterated product in direct contravention to the provisions of FIFRA, *see* 7 U.S.C. § 136j(a)(1) ("It shall be unlawful ... to distribute ... (E) any pesticide which is adulterated....").[5]

The parties apparently agree that FIFRA provides no right of action for private litigants. *See Fiedler v. Clark,* 714 F.2d 77, 79 (9th Cir.1983) ("the legislative history confirms that Congress did not intend to create a private right of action under FIFRA"). They thus agree that plaintiffs cannot directly assert a cause of action for a FIFRA violation. Plaintiffs maintain, though, that they have not attempted to allege a cause of

---

**5.** That section also proscribes the sale or distribution of "any registered pesticide, the composition of which differs at the time of its distribution or sale from its composition as described in the statement required in connection with its registration under Section 136a of this Title." Plaintiffs also contend that Du Pont violated this provision of FIFRA.

action under FIFRA, but rather have merely alleged a negligence per se claim that is predicated on alleged violations of FIFRA. However, as one court has explained:

"[A] fundamental requirement in applying the doctrine of negligence per se is that the party asserting negligence per se be a member of the class intended to be protected by the statute or regulation."

Courts considering whether to recognize negligence per se based on violation of broad environmental and public health statutes and regulations such as FIFRA have approached this issue by determining whether, in enacting the statute, the legislature intended to create a private right of action.

*Rodriguez v. American Cyanamid Co.*, 858 F.Supp. 127 (D.Ariz.1994) (citations omitted). This court concludes that since Congress did not intend to create a private right of action under FIFRA, then any alleged violation of that statute by defendant cannot provide a basis for a negligence per se claim. *See id.* (dismissing negligence per se claim based on FIFRA in personal injury suit for damages since Congress created no private right of action for its violation); *Dine v. Western Exterminating Co.*, No. 86–1857–OG, 1988 WL 25511 (D.D.C. Mar. 9, 1988) (plaintiffs may not invoke doctrine of negligence per se based on FIFRA violation); *cf. Sanford Street Local Dev. Corp. v. Textron, Inc.*, 768 F.Supp. 1218, *vacated on other grounds*, 805 F.Supp. 29 (W.D.Mich.1991) (negligence per se claim based on violation of Toxic Substances Control Act is little different than implied right of action under TSCA and since Congress did not provide private action for money damages, negligence per se claim would be dismissed). Accordingly, defendant's motion for summary judgment will be granted on plaintiffs' negligence per se claim.

■■■ Defendant asserts, finally, that plaintiffs used Benlate in a manner that was not provided for on the product label in that they "dipped," or "soaked" their blackberries and blackberry root cuttings in a solution of Benlate and Captan, another fungicide, and used Benlate for dipping in concentrations much stronger than recommended on the product label. Du Pont argues that by virtue of this "misuse" of Benlate, plaintiffs are barred from recovering in this action any damages for losses of blackberry plants or cuttings. Defendant's argument, however, overlooks an important aspect of the "misuse" defense. As the Mississippi Supreme Court has recognized, "misuse" is a form of contributory or comparative negligence which, under Mississippi law, can be an absolute bar to recovery, but only if such misuse was the sole proximate cause of a plaintiff's loss or injury. *See Ford Motor Co. v. Matthews*, 291 So.2d 169, 175 (Miss.1974). Du Pont has not contended, so far as the court can discern, that plaintiffs' alleged misuse of Benlate caused, or even contributed to the damage to plaintiffs' plants. Tom Miller's testimony, though, tends to suggest the converse, that his manner of application of Benlate was not a causative factor in the loss. Miller acknowledged that the Benlate label said nothing about dipping blackberries, and that dipping had been recommended, instead, by someone in Mississippi State University's Extension Department. He further testified that the MSU Extension Department developed the formula to be used in the dipping process. However, Miller also explained that he had dipped his blackberry cuttings in the very same Benlate/Captan solution during each of his nineteen years in the blackberry farming business, and that his use of the solution had never resulted in any damage whatsoever until 1991, when he began experiencing the problems that gave rise to this lawsuit. This testimony, which is uncontroverted, tends to suggest that the manner in which Miller applied Benlate to his blackberries and root cuttings, which is condemned by Du Pont as not conforming to the directives of the Benlate label, was not a proximate cause, and certainly was not *the* proximate cause of his damage. In the court's opinion, there is, at the very least, a question of fact as to this causation issue which should be presented to a jury for consideration.[6]

---

6. Another essential element of a "misuse" defense is foreseeability; the defendant must show not only that the plaintiffs misused the product, but also that such misuse was not reasonably foreseeable by defendant. *See Ford Motor Co. v. Matthews*, 291 So.2d 169, 175 (Miss.1974). The

Based on the foregoing, it is ordered that defendant's motion for partial summary judgment is granted as set forth herein.

ORDERED.

Millers have argued that Du Pont knew that farmers used Benlate.... The court has reviewed plaintiffs' evidentiary submissions but has not discovered therein any proof that Du Pont actually knew that ... However, that Du Pont may not have had actual knowledge of any such use, while not irrelevant, is not determinative for purposes of a misuse defense. The question is not what the manufacturer actually knew, but whether it could reasonably have foreseen the particular use in question. And as to that issue, no evidence has been presented by either party. Arguably, therefore, there may also remain an issue of foreseeability for jury consideration.